FILED

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

JUN 29

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| JAMES GRANT, | ] | |
| Plaintiff, | ] | |
| vs. | ] | CV 98-N-3220-E |
| WAL-MART STORES, INC., | ] | |
| Defendant. | ] | **ENTERED** |
| | **Memorandum of Opinion** | JUN 2 9 2000 |

## I. Introduction.

The plaintiff, James Grant, brings this action pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12102, *et seq.* The court presently has for consideration the defendant's motion for summary judgment (Doc. No. 28), filed by Wal-Mart Stores, Inc.[1] The motion has been briefed by the parties and is ripe for decision. Upon due consideration, the motion for summary judgment will be granted.

## II. Statement of Facts.[2]

The plaintiff began working for Wal-Mart in June of 1993 as an unloader in the receiving department. In 1996 or 1997, the plaintiff became a stocker and continued to work the night shift. He suffered from diabetes and had poor circulation in his legs. Mr. Grant received a copy of Wal-Mart's associate handbook, which contains an attendance policy

---

[1] On June 13, 1999, the court granted the plaintiff's motion to dismiss all claims except for the ADA claims. *See* order (Doc. No. 36).

[2] The facts set out below are gleaned from the parties' submission of facts claimed to be undisputed, their respective responses to those submissions, and the court's own examination of the evidentiary record. These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Administrator U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).



stating that an absence of 3 consecutive days without notification is considered a voluntary resignation, as well as an associate benefit book, which outlined Wal-Mart's leave procedure.

In January of 1998, the plaintiff had surgery on his leg, and notified Wal-Mart of his need to be off work. The plaintiff returned to work in April of 1998, and worked 38.11 hours before notifying Tony Alcuri, one of his supervisors, that he needed to have another surgery. However, the plaintiff did not have the surgery, alleging that he could not financially afford to be away from work at that time. The plaintiff alleges that he attempted to return to work in April of 1998, but Nick Defilipis, plaintiff's supervisor, would not allow him to return to work without a statement from his physician. The plaintiff obtained a statement from his doctor on May 6, 1998, indicating that he could return to work without restrictions. In the interim, Jack Herring became plaintiff's new supervisor after Mr. Defilipis was transferred to another store. The defendant asserts that the plaintiff did not return to work until May 28, 1998, and the exit interview form states a termination date of May 28, 1998; however, the plaintiff asserts that the date was earlier in May. Regardless of the specific day, the plaintiff asserts that Mr. Herring refused to accept the physician's statement, and the plaintiff was terminated for failing to report to work for over three days and for failing to complete a leave of absence form as required by Wal-Mart's associate benefit book. Mr. Herring asserts that no physician's statement was ever presented to him.

The plaintiff now asserts that the defendant discriminated against him on the basis of his disability.

### III. Summary Judgment Standard.

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings. *Id.* at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon

3

motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52; *see also Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 745 n.11(1983) (indicating the standard for summary judgment is "[s]ubstantively . . . very close" to that for motions for directed verdict). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989).

Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are functions of the jury, and, therefore, "[t]he evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. The nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

**IV. Discussion.**

In order to establish a prima facie case of disability discrimination under the ADA, the plaintiff must present evidence sufficient to justify a jury in finding: (1) the plaintiff has a disability as defined by the ADA; (2) he is a "qualified individual" with a disability as defined by the Act; and (3) he was subjected to unlawful discrimination at the hands of his employer because of his disability. *Terrell v. USAir*, 132 F.3d 621, 624 (11th Cir. 1998); *Morisky v. Broward County*, 80 F.3d 445, 447 (11th Cir. 1996). In order to prove this second element of his prima facie case, the plaintiff must meet the ADA's definition of a "qualified individual." *Morisky*, 80 F.3d at 447. The statute defines a "qualified individual" with a disability as a person "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). "The term essential functions means the fundamental job duties of the

employment position the individual with a disability holds or desires." 29 C.F.R. § 1630.2(n)(1).

The concept of reasonable accommodation is crucial to the ADA's scheme. To qualify for a job, the plaintiff need not show that he is able to perform the primary functions of a job in the same manner and on the same terms as can an employee who is not disabled. Instead, the plaintiff can meet his burden by showing that he can perform the essential functions of the job despite his disability, provided his special needs are reasonably accommodated. Importantly, however, "the burden of identifying an accommodation that would allow a qualified individual to perform the job rests with that individual." *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1286 (11th Cir. 1997). "[A]n ADA plaintiff (1) as part of [his] burden of production, must identify an accommodation that would allow [him] to perform [his] job duties and (2) as a part of [his] burden of proving [his] case, must establish that such an accommodation is reasonable." *Willis v. Conopco, Inc.*, 108 F.3d 282, 284-86 (11th Cir. 1997).

In this case, the defendant argues that the plaintiff is estopped from asserting an ADA claim because he previously represented to the Social Security Administration that he was totally and permanently disabled. Accordingly, the defendant asserts that the plaintiff cannot satisfy the second prong of his prima facie case because he cannot show that he is a qualified individual with a disability as that term is defined by the ADA, specifically that he is qualified and able to perform the essential functions of his job with or without a reasonable accommodation.

6

The plaintiff testified that his condition worsened after May of 1998, and either in July or August of 1998, he "couldn't perform. . . . It got worse. It just got so bad I couldn't really do nothing but stand around and look. And I didn't know what was wrong, but Dr. Jordan said that the only way that that would go away is that you got to have this other surgery." Movant's evidence (Doc. No. 30) exhibit B at 117. The plaintiff testified that Dr. Jordan told him

> [i]f you go out there and try to work, especially at a place that got insurance, you are going to hurt yourself trying to do good on the job. I'm going to advise you to go ahead and file for your disability. Because if you don't, you can mess yourself up. You could even fall and hurt yourself on them people's job. It don't make no sense for you to go out there and try that.

*Id.* at 122-23. The plaintiff testified that he did apply and was approved for disability benefits, and receives a check in the amount of $648.00 a month. *Id.* at 123-24. He further testified that he certified to Social Security that he was unable to work and maintains that this statement is true. *Id.* at 125. When asked if he was still totally disabled from working, the plaintiff testified that he "imagine[d] so, because they gave me disability right off the bat" and that he still could not work. The plaintiff also testified that Social Security sent him to a specialist who performed tests, which "showed up how damaged my leg was." *Id.* at 127.

The plaintiff also testified that he has not had the surgery because he does not have any insurance and has not been employed anywhere else even though he has applied for other jobs. *Id.* at 117-118. He stated that he would be unable to work

> until I can get this operation. Dr. Jordan, like he said, I get this surgery behind me. And then he said that probably that you will probably be able to go back to the life that you was living before your legs really got that bad on

7

> you. But until you have this surgery, you are going to have problems with your leg for the rest of your life.

*Id.* at 126.

In a recent decision, the United States Supreme Court held that applying for and receiving social security benefits

> does not automatically estop the recipient from pursuing an ADA claim. Nor does the law erect a strong presumption against the recipient's success under the ADA. Nonetheless, an ADA plaintiff cannot simply ignore her SSDI contention that she was too disabled to work. To survive a defendant's motion for summary judgment, she must explain why that SSDI contention is consistent with her ADA claim that she could "perform the essential functions" of her previous job, at least with "reasonable accommodation."

*Cleveland v. Policy Management Sys. Corp.,* 526 U.S. 795, 119 S.Ct. 1597, 1600, 143 L.Ed.2d 966 (1999). The Court went on to emphasize that "a plaintiff's sworn assertion in an application for disability benefits that she is, for example, 'unable to work' will appear to negate an essential element of her ADA case–at least if she does not offer a sufficient explanation." *Id.* at 1603. Accordingly, a plaintiff cannot "simply ignore the apparent contradiction that arises out of the earlier SSDI total disability claim," *id.*, and the court should require an explanation "[w]hen faced with a plaintiff's previous sworn statement asserting 'total disability' or the like." *Id.* at 1604. Such an explanation "must be sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good faith belief in, the earlier statement, the plaintiff could nonetheless 'perform the essential functions' of [his] job, with or without 'reasonable accommodation.'" *Id.*

In decisions that preceded the Supreme Court's decision in *Cleveland,* the Eleventh Circuit laid out its own approach to this issue. *See Talavera v. School Bd. of Palm Beach*

8

*County,* 129 F.3d 1214, 1220 (11th Cir. 1997); *Taylor v. Food World, Inc.,* 133 F.3d 1419 (11th Cir. 1998). The Eleventh Circuit has disapproved of the indiscriminate use of judicial estoppel to defeat the ADA claim of a plaintiff who certified that she was totally disabled in applying for disability benefits. *See Taylor*, 133 F.3d 1423; *Talavera,* 129 F.3d at 1220. Instead of applying a *per se* estoppel rule to such plaintiffs, courts in this circuit are to consider whether estoppel is warranted based on specific representations made in obtaining benefits that are in fact inconsistent with a claim that one is a "qualified individual" under the ADA. *See Talavera,* 129 F.3d at 1220. In light of this approach, the Eleventh Circuit has made it clear that a plaintiff is bound by any specific representations made in seeking benefits. "[A]n ADA plaintiff is estopped from denying the truth of any statements made in her disability application" because "an ADA plaintiff should not be permitted to disavow any statements she made in order to obtain . . . benefits." *Id.*

In both *Talavera* and *Taylor* the court declined to estop the plaintiff from going forward with an ADA claim after making a highly fact-specific inquiry into the precise representations made in seeking benefits. *Talavera* and *Taylor* are based on the premise that, because of the ADA's unique structure, an assertion that a plaintiff is not capable of working under conventional circumstances is not necessarily inconsistent with a claim that the plaintiff is also a "qualified individual" under the ADA. *See Taylor*, 133 F.3d at 1422. In *Talavera*, "[the] court determined" that a "certification of total disability on a disability application is not inherently inconsistent with being 'qualified' under the ADA. The court reasoned that the SSA, in determining whether an individual is entitled to disability benefits,

does not take account of the effect of reasonable accommodation." *Taylor*, 133 F.3d at 1423 (emphasis added).

Other courts have spoken to this matter since the *Cleveland* decision. For example, in *Motley v. New Jersey State Police*, 196 F.3d 160 (3d Cir. 1999), the Third Circuit found that a defendant's motion for summary judgment should be granted because of the plaintiff's prior assertions and his inability to reconcile those inconsistencies with his ADA claim. The court held:

> It is difficult to get around the conclusion that, in at least one of the fora, Motley was not completely honest. . . . Nowhere in his application for the disability pension is there any indication that Motley could perform the essential functions of a state trooper, with or without accommodation. "Employers . . . are not required to find another job for an employee who is not qualified for the job he or she was doing."

*Id.* at 166 (quoting *School Bd. Of Nassau County v. Arline* 480 U.S. 273, 289 n.19, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987)). In reaching its decision, the court noted that (1) in his application for disability benefits, the plaintiff stated that he was "permanently and totally disabled," which was supported with detailed descriptions of his injury and how it impacted adversely his ability to work; (2) the medical board concluded that the plaintiff was permanently incapacitated from his duties, which was uncontested by the plaintiff; and (3) the plaintiff had failed to proffer a reasonable explanation for his inconsistent assertions. *Id.* at 166-67.

Likewise, in *Mitchell v. Washingtonville Central School District*, 190 F.3d 1 (2d Cir. 1999), the Second Circuit, in citing *Cleveland*, rejected the plaintiff's ADA claim, finding that the plaintiff had argued inconsistent positions in prior proceedings before the Workers'

Compensation Board and the Social Security Administration. During those proceedings, the plaintiff argued that he was incapable of standing or walking for any length of time, was in constant pain when he wore his prosthesis, and could only perform sedentary work. These statements, along with medical reports submitted by the plaintiff supporting these statements, were adopted by the ALJ and the workers' compensation judge resulting in determinations in the plaintiff's favor. In the ADA litigation, however, the plaintiff argued that, during that same time period, he was fitted with a new prosthesis which allowed him to stand and walk up to four to five hours a day.[3] The court found that this case involved "conflicting statements about purely factual matters," and that the *Cleveland* Court specifically noted that its "consideration . . . leaves the law related to the former, purely factually, kind of conflict where we found it." *Id.* at 7 (*quoting Cleveland,* 119 S.Ct. at 1601-02).

It is clear from these cases that while a mere application for benefits or general assertion of an inability to work will not automatically estop an ADA plaintiff, specific factual assertions which are inconsistent can and likely will preclude a plaintiff's ADA claim. It is important that the plaintiff actually understands what he is signing and saying, because a mere error or misunderstanding will not be sufficient to bar the later ADA claim. For the same reason, the court should also assess any direct evidence that the plaintiff knew that his assertions were inconsistent or untruthful, and proceeded with them anyway.

In the instant case, the plaintiff has made factual assertions which are directly

---

[3] The plaintiff in *Mitchell* even had a vocational expert testify in his ADA case that he was able to perform his previous job once he had received the new prosthesis. *Mitchell,* 190 F.3d at 5.

11

inconsistent with his present ADA claim. With this being the case, he cannot survive the defendant's motion for summary judgment.

The plaintiff testified in his deposition that he certified to Social Security that he was unable to work and maintains that the statement is true. Movant's evidence (Doc. No. 30) at 125. When asked if he was still totally disabled from working, the plaintiff testified that he "imagine[d] so, because they gave me disability right off the bat" and that he still could not work. The plaintiff also testified that Social Security sent him to a specialist who performed tests, which "showed up how damaged my leg was." *Id.* at 127. It is undisputed that the plaintiff continues to receive $648.00 a month in social security disability benefits.

In his brief, the plaintiff admits notifying the Social Security Administration that he was unable to work, but insists that

> his inability to work is directly related to his loss of medical insurance and subsequent ability to obtain necessary surgery. Grant does not dispute that without necessary surgical intervention he is currently unable to work without accommodation. If Wal-Mart had not terminated Grant, Grant would have had access to continuing medical insurance. It is manifestly unjust to allow Walmart to benefit from the doctrine of judicial estoppel in this case as it is Walmart's illegal termination of Grant which caused Grant's inability to work and earn.

Opponent's responsive submission (Doc. No. 35) at 20-21. The plaintiff also testified that he would be unable to work

> until I can get this operation. Dr. Jordan, like he said, I get this surgery behind me. And then he said that probably that you will probably be able to go back to the life that you was living before your legs really got that bad on you. But until you have this surgery, you are going to have problems with your leg for the rest of your life.

*Id.* at 126.

The court finds that the position Mr. Grant has taken with the Social Security Administration is inconsistent with his current argument that he is a qualified individual with a disability who can perform the essential functions of his past work with the defendant. The plaintiff clearly states that he cannot work unless he has surgery. Accordingly, this statement seems to be dispositive of the plaintiff's ADA claim. However, the plaintiff goes to great lengths to emphasize that if it were not for the fact that defendant terminated him, he would have the health insurance to cover the surgery needed. The court has not found, and the plaintiff does not cite to, any law under the ADA which requires an employer to keep an employee on the payroll so that the employee will have medical insurance to cover surgery allegedly needed to enable him to work. In other words, it is not illegal for an employer to terminate an employee for a nondiscriminatory reason, even when such termination results in the employee losing health insurance coverage.

Even though the plaintiff may argue that he was fired for a discriminatory reason because he was able to work at the time he was terminated, the evidence is to the contrary. The plaintiff admits that when he returned to work on April 6, 1998, he only worked 38.11 hours before notifying his supervisor that he needed to have another surgery. Opponent's responsive submission (Doc. No. 35) at response to movant's statement of undisputed facts, ¶14. The plaintiff testified that he was scheduled for the surgery, went through all the tests, and got prepped for surgery, and then decided to notify Wal-Mart. The plaintiff testified that he took in a doctor's slip and explained that

> I got to go right back and have surgery. They found something else wrong, and they say it's going to give me a problem, going to really give me a big problem. And he said he wanted to correct that before it could get any

13

> worse. And so I handed Tony the slip that had on there where I showed that
> I had to be away from my job showing that I was fixing to go into surgery.

Movant's evidence (Doc. No. 30) exhibit B at 48-49.

Interestingly, the plaintiff *chose* not to have the surgery, testifying "I just wanted to go back to work, and I needed to go back to work. I was so far behind." Opponent's evidence (Doc. No. 34) at 49-50. Even though the plaintiff managed to get an authorization slip from his doctor, dated May 6, 1998, indicating that he could return to work with no restrictions, movant's evidence (Doc. No. 30) exhibit L, it is clear that the plaintiff's condition was severe in April of 1998, and that he needed surgery. In fact, the plaintiff testified that he had gone so far as to be prepped for the surgery.[4] Thus, his testimony that his condition did not worsen until either July or August of 1998 (which would have been a month after his termination) contradicts the other evidence in the record.

Based upon all of the foregoing, the court concludes that having made inconsistent statements which cannot be reconciled, Mr. Grant is now estopped to claim that he is a "qualified individual" with a disability under the ADA. Furthermore, since Mr. Grant is unable to offer any evidence to create a genuine issue of material fact regarding whether he is a "qualified individual," he cannot establish a necessary element of his ADA claim. In either case, the defendant's motion for summary judgment is due to be granted.

---

[4] The plaintiff even testified that Dr. Jordan told him that "the only way that that would go away is that you got to have this other surgery." Movant's evidence (Doc. No. 30) exhibit B at 117.

A separate order consistent with this opinion will be entered contemporaneously herewith.

Done, this 28th of June, 2000.

EDWIN L. NELSON
UNITED STATES DISTRICT JUDGE